IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ATLANTIC OCEANIC, LLC, | § | |
| *Petitioner*, | § | |
| | § | |
| vs. | § | C.A. No. 4:25-cv-0829 |
| | § | |
| HF OFFSHORE SERVICES | § | |
| MEXICO SAPI de CV, | § | |
| *Respondent*. | § | |

**PETITION TO RECOGNIZE, CONFIRM, AND ENFORCE INTERNATIONAL ARBITRATION AWARD**

Petitioner, Atlantic Oceanic, LLC ("Atlantic Oceanic" or "Petitioner"), respectfully petitions the Court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), the Federal Arbitration Act, 9 U.S.C. §§201-208 (the "FAA"), and state and federal common law for an order recognizing, confirming, and enforcing the Award of the London Maritime Arbitrators Association ("LMAA") against Respondent HF Offshore Services Mexico SAPI de CV ("HF Offshore" or "Respondent"), and for entry of judgment thereon. In support, Petitioner respectfully shows the following:

## A.
## INTRODUCTION AND BACKGROUND FACTS

1. On February 25, 2024, Atlantic Oceanic chartered the Multi-Purpose Support Vessel *Atlantic Tonjer* (the "Vessel") to HF Offshore. A dispute between the parties arose when HF Offshore wrongfully terminated the charterparty for the Vessel on or about August 19, 2024.

2. On September 5, 2024, Atlantic Oceanic initiated arbitration proceedings in London against HP Offshore for damages arising out of the breach.

3. On October 17, 2024, Atlantic Oceanic served an application for a Partial Final Award (the "Application") seeking an immediate award in respect of its claims in debt and for injunctive relief.

4. On November 26, 2024, the LMAA entered a Partial Final Award (the "First Award") holding, among other things, the following:

(1) Atlantic Oceanic's claim in respect of hire and crew costs unpaid at the date of termination was sustainable and succeeded in sums totaling US$463,643.92.

(2) Atlantic Oceanic's claim in respect of contractual interest (to the date of the Award) succeeded in the total amount of US$39,135.51.

(3) Atlantic Oceanic is entitled to interest on the foregoing sums at the contractual rate of 2% per month, until the date of payment (as set out in the appendix to the First Award).

(4) HF Offshore should, forthwith (and, on any view, within 7 days of the Partial Final Award):

(a) Instruct (and take all necessary steps to procure) Customs Broker Felipe Miguel González Jaimes (Patente: 3715), or such other individual as may be authorised and effective to take the steps hereafter set out (collectively, "the Customs Broker"), to cancel Temporary Import Permit (Pedimento de Importacion Temporal), pursuant to which the vessel "ATLANTIC TONJER" was imported into Mexico, stating (and/or otherwise making clear as required) that the cancellation is due to the definitive exit of the Vessel from the country under license (pedimento) 24 06 0965 4000020; and

(a) Provide all necessary documents and information for any such Customs Broker to complete the process of cancellation of the Temporary Import Permit; and

(b) In the above regard, instruct (and take all necessary steps to procure) the Charterers' local ships agent in Mexico, Sea Land, to take any steps necessary to secure the cancellation of the Temporary Import Permit; and

(c) Take any and all further or other necessary steps to cancel the Temporary Import Permit.

(5) To the extent that Atlantic Oceanic's Application sought the determination

of other claims advanced by Atlantic Oceanic, those claims remained undetermined.

(6) Atlantic Oceanic were entitled to their legal costs of the Application, such costs to be assessed by the Tribunal if not agreed.

A true and correct copy of the First Award is attached hereto as **Exhibit A** and incorporated by reference for all purposes.

5. On February 10, 2025, the LMAA entered a Second Partial Final Arbitration Award (the "Second Award") holding, among other things, the following:

(1) Atlantic Oceanic's claims as to financial relief and/or damages addressed succeed as follows:

(a) The "*demobilization fee*", in the sum of US$1,100,000.00.

(b) Damages in respect of *Claim 1(loss of hire)* in the total sum of US$3,513,297.38.

(c) Damages in respect of *Claims 2 and 3 (ongoing detention and loss of opportunity)* in the total sum of US$4,858,386.22.

(2) Atlantic Oceanic is entitled to declaratory relief to the effect that Captain Felderhoff, Mr. Hammer and Captain Mihaljevic fraudulently misrepresented that a 6-month firm period with ENI had (subject to finalization of the formal contract) in practice been secured.

(3) Atlantic Oceanic is entitled to interest on the above sums at a rate of 4% per annum, to be compounded at quarterly rests, and to run:

(a) From a date to be determined (upon further submission) until the date of the Second Award.

(b) From the date of the Second Award until the date of payment.

(4) The Owners are entitled to their legal costs, such costs to be assessed by the Tribunal if not agreed.

A true and correct copy of the Second Award is attached hereto as **Exhibit B** and incorporated by reference for all purposes.

6. Atlantic Oceanic now seeks entry of judgment to enforce the First Award and Second Award.

## B.
## JURISDICTION AND VENUE

7. The Court has jurisdiction in this case pursuant to 28 U.S.C. §1331 as it presents federal questions arising under the FAA. This Court also has original subject matter jurisdiction pursuant to 9 U.S.C. §203 as this action arises under the New York Convention. Finally, this Court has admiralty jurisdiction over this action as it is an action to enforce arbitral and judicial awards sounding in admiralty for breach of a maritime contract. *See International Sea Food, Ltd. v. M/V Campeche*, 566 F.2d 482, 484 (5th Cir. 1978); *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 537 (4th Cir. 2013).

8. Pursuant to 9 U.S.C. §204, venue is proper in any district in which the underlying dispute, save for the arbitration agreement, could have been brought. The underlying dispute, as discussed in detail below, is for breach of a charterparty by HF Offshore, a non-resident of the United States believed to do business in and through Texas and Houston. Therefore, pursuant to 28 U.S.C. §1391(b)(3) and (c)(3), venue is proper in this district as HF Offshore is a non-resident and is subject to the Court's personal jurisdiction.

## C.
## PARTIES

9. Petitioner Atlantic Oceanic, LLC is a Delaware Limited Liability Company with its principal place of business in New Bedford, Massachusetts.

10. Respondent HF Offshore Services Mexico SAPI de CV is a company organized under the laws of Mexico with its registered business address at Av. Aviacion 245, Petrolera,

24179 Ciudad del Carmen, Campeche, Mexico. HF Offshore may be served at its registered business address under the Hague Convention or as otherwise allowed by law.

## D.
## ARGUMENT & AUTHORITIES

***The New York Convention***

11. Judicial recognition and confirmation of international arbitral awards is governed by the New York Convention, codified at 9 U.S.C. §§201-08. *See Schlumberger Tech. Corp. v. United States*, 195 F.3d 216, 217 (5th Cir. 1999). The goal of the New York Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Imperial Ethiopian Gov't v. Baruch- Foster Corp.*, 535 F.2d 334, 335 (5th Cir. 1976) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, (1974)). Actions or proceedings falling under the New York Convention include "arbitration agreement[s] or arbitral award[s] arising out of a legal relationship, whether contractual or not, which is considered as commercial." 9 U.S.C. §202.

12. The arbitration between the parties in this case took place in London, as directed by the charterparty at issue. A legal, commercial, relationship existed between the parties, a U.S. and a Mexican company, and a London arbitrator entered an international award in a dispute between these two entities from signatory countries. As such, the New York Convention governs this Petition.

***New York Convention Standard of Review***

13. Mirroring the expeditious nature of arbitration, the New York Convention provides a "summary procedure" for enforcing foreign arbitral awards. *See Imperial*

*Ethiopian Gov't*, 535 F.2d at 335. As such, an enforcing court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specific in the said Convention." 9 U.S.C. §207.

14. Convention defenses "are narrowly construed to give effect to the Convention's goal of encouraging the timely and efficient enforcement of awards." *Karaha Bodas Company LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 190 F.Supp.2d 936, 943 (S.D. Tex. 2001). "In short, there is a 'general pro-enforcement bias' manifested in the Convention." *Karaha Bodas Company*, 190 F.Supp.2d at 943 (quoting *American Const. Mach. & Equip. Corp. v. Mechanised Const. of Pakistan, Ltd.*, 659 F.Supp. 426, 428 (S.D.N.Y. 1987)).

15. Article V of the New York Convention - as implemented by 9 U.S.C. §207 - sets out the only grounds on which a court may refuse to confirm an award, none of which are present in this case.

16. An enforcing court's role is limited to evaluating any defenses under the New York Convention. The court will not reconsider the arbitrator's findings. *Karaha Bodas Company,* 190 F.Supp.2d at 943 (quoting *Europcar Italia v. Maiellano Tours*, 156 F.3d 310, 315 (2d Cir. 1998)) ("[A]bsent extraordinary circumstances, a confirming court is not to reconsider the arbitrator's findings."). An arbitrator's "mistake in fact or law is insufficient to refuse confirmation of an arbitral award." *Id.* The party seeking to avoid enforcement of the arbitral award bears the burden of proof in confirmation proceedings. *Id.* (citing *Imperial Ethiopian Gov't*, 535 F.2d at 336).

## E.
## CONCLUSION

For the foregoing reasons, Petitioner Atlantic Oceanic respectfully petitions the

Court for an Order:

1. Recognizing, confirming, and enforcing the First and Second Awards rendered in Atlantic Oceanic's favor against HF Offshore pursuant to the New York Convention and 9 U.S.C. Sections 201-208;

2. Directing that judgment be entered in Atlantic Oceanic's favor against HF Offshore for the demobilization fee as found in the Awards in the sum of **One Million, One Hundred Thousand Dollars (US$1,100,000.00)** and additional damages in the amount of **Eight Million, Three Hundred and Seventy-One Thousand, Six Hundred and Eighty-Three Dollars and Sixty Cents ($8,371,683.60)** (Claims 1, 2, and 3);

3. Confirming the LMAA's declaratory relief that Captain Heiko Felderhoff, Mr. Harald F. Hammer, and Captain Nedjeljko Mihaljevic fraudulently misrepresented that a 6-month firm period with ENI had been secured for the Vessel;

4. Awarding interest at a rate of 4% per annum, to be compounded quarterly;

5. Awarding Atlantic Oceanic all taxable costs; and

6. Granting all other relief to which Atlantic Oceanic may be entitled to at law or in equity.

Dated: February 25, 2025.

Respectfully submitted,

*/s/ Justin W. R. Renshaw*

Justin W. R. Renshaw
S.D. TX Adm. ID No. 25865
Texas Bar No. 24013392
RENSHAW, P.C.
2900 Weslayan, Suite 360
Houston, Texas 77027
Phone: (713) 400-9001
justin@renshaw-law.com

*Counsel for Atlantic Oceanic, LLC*